IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Janie C. Pressley, ) | Civil Action No. 8:07-3640-HFF-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Janie C. Pressley, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 58 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 87.) She has a high school education, and has worked as a housekeeper/baby sitter and health-care aide. (R. at 96, 101.) She claims she became disabled on May 4, 2001, due to severe arthritis pain, swelling, diabetes and hip pain.  (R at 87-89, 95.)

The plaintiff filed her application for DIB on January 22, 2002. (R. at 87-89.) After her claim was denied initially and upon reconsideration, a hearing was held before an administrative law judge on May 20, 2003. (R. at 36-40, 44-63.) On September 26, 2003, the ALJ issued an unfavorable decision denying the plaintiff's claim, finding that she could perform a significant range of medium work. (R. at 44-51.)  On January 28, 2005, the

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Appeals Counsel granted plaintiff's request for review and vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. (R. at 80-83.) A supplemental hearing was held before the ALJ on June 6, 2005. (R. at 477-522.) The ALJ denied plaintiff's claim on December 6, 2005, finding she could perform her past work as a housekeeper. (R. at 14-29.) The Appeals Counsel denied the plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purpose of judicial review. (R. at 5-8.)

The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's obesity, diabetes mellitus, fibromyalgia, pain in her hands, left hip, and back are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in, Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to lift up to 20 pounds occasionally and 10 pounds frequently. She can sit for 6 out of 8 hours, stand for 6 out of 8 hours, and walk for 6 out of 8 hours. She can frequently push/pull with the upper and lower extremities. She can occasionally balance, stoop, kneel, crouch, and crawl because of her arthritis. She can never climb ladders, scaffolds, or ropes because of her weight. She should be (sic) have concentrated exposure to fumes due to her vascular disease and her smoking .

7. The claimant's past relevant work as a housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable obesity, diabetes mellitus, fibromyalgia, and pain in her hands, left hip, and back do not prevent the claimant from performing her past relevant work.

9. The claimant was not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner

may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) concluding that the plaintiff could return to her past relevant work; (2) failing to consider the effects of her obesity; (3) failing to perform a

proper credibility analysis; and (4) failing to accept her allegations of frequent urination. The Court will address each alleged error in turn.

**I.     Medical-Vocational Guidelines**

The plaintiff first contends that the ALJ failed to analyze whether she was disabled under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Grid Rules"). Specifically, the plaintiff contends that she should have been found disabled under Grid Rules 201.4 and 202.4. As the defendant contends, Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. Because the ALJ found the plaintiff could perform her past relevant work at step four (R. at 28), there was no need to proceed to the fifth step to determine whether other jobs existed which she could perform. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (if an applicant's claim fails at any step of the process, the Commissioner need not advance to the subsequent steps).

The plaintiff concedes the inapplicability of the Grid Rules under such circumstances but contends that the ALJ erred in finding her capable of performing her past relevant work as a "housekeeper." The plaintiff argues that there was no evidence that she could return to her past relevant work as she performed it. The plaintiff contends that she never performed "housekeeping" as that job is described in the Dictionary of Occupational Titles ("DOT") but instead worked in "child care." The plaintiff relies on her own description of the job duties required by her "past relevant work" to argue that her past work is rightly characterized as child care. (See R. at 96.)

A review of her own written description, however, reveals that while she did perform child and patient care, she also was a "housekeeper," did "housework," "lift[ed]," "cook[ed],"

and "clean[ed]." (R. at 96.) More importantly, the Vocational Expert ("VE"), who testified to reviewing the record and who was present for the plaintiff's testimony (R. at 517), concluded that the plaintiff's past relevant work included both housekeeper and health care aid, *id*. The VE testified that the housekeeper position was of a light exertional level and an SVP of 2. *Id*. The ALJ gave the VE 8 hypotheticals of increasing limitation and the VE concluded that under all of them the plaintiff could return to her past relevant work as a housekeeper either as performed by the plaintiff or as performed generally in the national economy, except under hypotheticals 7 and 8 where the ALJ included the limitation of the need for frequent bathroom breaks. (R. at 519.)

This recommendation of the VE represented substantial evidence upon which the ALJ could conclude both that the plaintiff's past relevant work was that of housekeeping and that she could still perform it, either as she had been performing that work or as it is performed generally in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). The plaintiff does not challenge the VE's testimony. Instead, the plaintiff summarily contends that she is limited in her ability to walk, stand, and lift/reach in ways that disqualify her from performing housekeeping as it is defined, DOT 323.687-014.

First, the ALJ concluded that the plaintiff could work in housekeeping as she had performed that work and not necessarily as the DOT definition requires the position to be performed. (R. at 27.) Second, the ALJ included such limitations in his hypotheticals to the VE. (516-19.) The hypotheticals included limitations regarding walking and standing in an eight hour day (R. at 517) and reaching overhead (R. at 518). In each instance, the VE concluded that she could perform her past relevant work. Lastly, the plaintiff has made no effort to explain how the limitations to her ability to walk, stand, or reach overhead precluded her from performing her past relevant work. She cites no evidence to that end and does not challenge any of the VE's conclusions in that regard. Her contentions are merely a cursory complaint that she cannot perform such work. She has not put forward

6

any evidence suggestive that the ALJ's decision was made in the absence of substantial evidence.

## II.     Obesity

The plaintiff next contends that the ALJ failed to consider the enhancing effect of obesity on the medical conditions from which she suffers.  The plaintiff argues, although summarily, that the ALJ erred in applying Social Security Ruling 02-1p in regards to her obesity.

Social Security Ruling 02-1p defines obesity as a "complex, chronic disease characterized by excessive accumulation of body fat."  SSR 02-1p.  The Ruling recognizes obesity can cause limitations in all exertional and postural functions.  *See id.*  It recognizes that obesity makes it harder for the chest and lungs to expand.  *See id.*  Obesity forces the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood and carry oxygen to the body.  *See id.*  The Ruling recognizes obesity can increase the severity of coexisting or related impairments, including musculoskeletal disorders.  *See id.*  The ALJ should consider a claimant's obesity in making a number of determinations, including whether the individual has a medically determinable impairment, the severity of the impairment, whether the impairment meets or equals the requirements of a listed impairment, and whether the impairment prevents the claimant from doing his past relevant work or other work in the national economy.  SSR 02-01p at *3.

The Court finds that the ALJ's consideration of the plaintiff's obesity is thoroughly consistent with SSR 02-01p.  The ALJ expressly acknowledged his obligations under SSR 02-01p and detailed the considerations related to the plaintiff's obesity which he was required to take into account.  (R. at 20.)  The ALJ next specifically addressed the medical evidence related to the plaintiff's obesity and found that it reflected virtually no significant limitations in sitting, standing, walking, lifting, carrying, pushing, pulling, climbing, balancing, stooping, and crouching.  *Id*.  The ALJ considered the plaintiff's physicians' comments that she could walk as far as she desired, that she had no motor loss, and that she ambulated

well.  (R. at 20, 326.)  He also found that an orthopedic surgeon only observed a mildly limited cervical range of motion and another treating physician reported no motor loss, no sensory loss, full range of motion of the neck, and that she did not have any neurologic deficits.  *Id*. The ALJ observed that other physicians agreed.  *Id*.  It is clear that the ALJ was generally persuaded by the absence of a physician's opinion that she had any work-related limitations due to obesity.  *Id*.

The ALJ also considered the plaintiff's subjective representations concerning her obesity and highlighted her testimony that her weight limited her ability to fit into an MRI machine, to use small restrooms, and to get in and out of the bathtub.  (R. at 21.)  The

Ultimately, the ALJ specifically accounted for the effects of the plaintiff's obesity by restricting her from climbing "because of her weight."  (R. at 26.)

The plaintiff makes no effort to explain how the ALJ's treatment of the plaintiff's obesity falls short of the requirements of SSR 02-1p.  The ALJ did not consider the plaintiff's obesity in a vacuum, separate from the functional limitations imposed by other impairments.  (R. at 20-21.)  Instead, the plaintiff's argument appears to rest on the allegation that the ALJ misconstrued two pieces of evidence.  First, the plaintiff contends that the ALJ too generously interpreted the conclusion of the plaintiff's treating physician that the plaintiff could "walk as far as she desires." (R. at 326.)  The plaintiff argues that the ALJ was mistaken to take this statement to somehow mean that she could walk a football-field length if desired, when the statement should be more consistently read with other testimony of the plaintiff that she can only walk within her home as much as she needs to.

The Court disagrees that the ALJ committed any error in interpreting the statement as he did.  The physician's note makes no qualification.  It simply states that the plaintiff reported that she could walk as far as she desired.  It was reasonable for the ALJ to take the notation at face value.  Simply because the plaintiff would draw from the remark a different conclusion, even if equally reasonable, does not change the fact that the ALJ had

substantial evidence to conclude as he did. *See Blalock*, 483 F.2d at 775. In fact, precisely because the ALJ took the notation as it read, the plaintiff has the burden to explain why it was more appropriate to read some qualification into the statement not otherwise apparent. She has cited no specific evidence that would explain why the ALJ should be considered as having committed error in failing to find a limitation on her ability to walk when none was specifically listed. Her conclusory statement that the ALJ's interpretation is not consistent with the plaintiff's general testimony does not carry the day. In fact, the medical records are precisely the type of evidence which, if inconsistent with the subjective testimony of a claimant, would justify the ALJ in accepting one over the other. *See Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). The opposite is not true – that the ALJ must somehow read medical evidence through the lense of the plaintiff's subjective testimony attempting to reconcile the two.

The plaintiff also summarily complains that the ALJ dismissed Dr. Jafer Gheraibeh's opinion that the plaintiff was not able to work. The plaintiff argues that the ALJ was wrong to dismiss that opinion on the bases that the plaintiff did not continue treatment with Dr. Gheraibeh, when she in fact did. The plaintiff has not explained how the objection has any relevance to the ALJ's consideration of her obesity. The plaintiff has not cited to Dr. Gheraibeh's opinions nor has the Court been able to determine how they are relevant to the obesity issue. (See R. at 25, 234, 254-57.) Even to the extent the ALJ was incorrect that the plaintiff stopped seeing Dr. Gheraibeh in 2002, such error is harmless insofar as it does not negate the other substantial evidence relied upon by the ALJ, as discussed above. Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary decision is of no moment. *See Blalock*, 483 F.2d at 775. As recited, the ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

### III.    Credibility Analysis

Next, the plaintiff makes some complaint that the ALJ did not properly credit her subjective complaints of swelling. In this regard, the ALJ noted that the plaintiff "alleged

9

that she is swollen all the time due to fibromyalgia." (R. at 22.)  The ALJ stated, "There are occasional references in the notes, but most doctors reported no edema. She said that she is currently being treated by Dr. Trefney for this condition." *Id*.

The plaintiff argues that her doctor, in fact, did record her complaints of swelling and edema in contrast to what the ALJ determined. (See R. at 141, 151, 469.)  The plaintiff does not in any way explain the significance of the evidence, however.  She does not attempt to argue how such swelling actually affects her functional performance.  Nor does she attempt to explain how the ALJ's decision is material error.  The sheer fact that the ALJ might have either missed the evidence or overstated the absence of it, is not error which justifies remand, if there is no harm flowing from it.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").  The plaintiff cites the relevant analytical framework  *Craig*, 76 F.3d at 593 for considering her subjective complaints, but admits that the ALJ did not make any error in its application.  The plaintiff simply contends that the ALJ "cherry-picked" the available evidence.

Contrary to the plaintiff's claim, an ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions.  *See Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered").  Moreover, the decision is, in fact, noticeably thorough in regards to the ALJ's consideration of the plaintiff's subjective complaints. (R. at 22-25.) The plaintiff's accusation, therefore, is substantially thin in light of her failure to explain how the evidence she recites dictates a different outcome.

The plaintiff has not made a rigorous defense of her argument on this objection.

**IV.    Frequency of Urination**

Lastly, the plaintiff summarily contends that the ALJ erred in rejecting her testimony regarding her frequency of urination. The plaintiff argues that this issue is relevant insofar as the VE testified that if the plaintiff needed to use the restroom with the frequency alleged, she would be unable to perform her past relevant work. (R. at 519.) The ALJ, however, rejected the plaintiff's testimony concerning the frequency of bathroom visits because the medical records reflected no complaints to her physicians and that she took no medication for the issue. (R. at 22.) The medical record, and any inconsistencies therewith, constitute substantial evidence upon which to discount the credibility of the plaintiff's testimony on this issue. *See Craig*, 76 F.3d at 595 ("Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's ***medical history, medical signs, and laboratory findings***; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain; and any medical treatment taken to alleviate it . . . ." (citations omitted and emphasis added)).

The plaintiff argues that the ALJ should have simply presumed that the frequency alleged was credible because it is a reasonably anticipated symptom of her diabetes and high blood pressure medications. The plaintiff rhetorically contends that there was no need for any physician to make such a notation. Even were it reasonable to expect that an increased frequency of urination would be a complication of such medications, the ALJ was not required to accept the frequency alleged – 11 times in a 6 hour period – in the absence of some evidence beyond the plaintiff's own subjective complaints. The plaintiff has not directed the Court to any evidence that the frequency of urination alleged would be reasonably anticipated based on her use of those medications, *see Craig*, 76 F.3d at 594 (describing objective inquiry of two-step process), nor any evidence that her personal

11

experience actually involved that degree of frequency. She has simply alleged as much. As described above, the ALJ cited substantial evidence to conclude differently (R. at 22) and the decision cannot be disturbed.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

November 4, 2008
Greenville, South Carolina